## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PAMELA SLEE and DAVID
SLEE,

              Plaintiffs,

    v.

WOODHULL TOWNSHIP, et.
Al.,

              Defendants.

Case No. 17-12103
Hon. Terrence G. Berg

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Dkt. 13, 14, 16, 17)

### I.    Introduction

Pamela and David Slee are suing Woodhull Township and several of its officials, employees and attorneys for allegedly violating their civil rights by bringing a malicious retaliatory lawsuit against them and by unlawfully searching their home and seizing their property. Dkt. 1. Woodhull Township is a political subdivision of Shiawassee County, Michigan. Pamela Slee was formerly the elected Supervisor of Woodhull Township and now serves as its elected Treasurer. This civil action raises claims under 42 U.S.C. § 1983 and several state law causes of action against the following thirteen defendants:

- Woodhull Township

- Diana Hasse, Supervisor of Woodhull Township

- Kay Nickols, formerly Supervisor of Woodhull Township

- Carol Maize, Clerk of Woodhull Township

- Tom Jelenek, Trustee of Woodhull Township

- Rick Betts, Trustee of Woodhull Township

- Jim Cribbs, Trustee of Woodhull Township

- Bill Dodge, Trustee of Woodhull Township

- Jim Brehm, Trustee of Woodhull Township

- Ken Young, "IT Expert" employed by Woodhull Township

- Deputy Keith Hansen, a Shiawasse County Deputy Sheriff[1]

- Helen Mills, an outside attorney for Woodhull Townhip, with the law firm Fahey Schultz Burzich Rhodes, PLC.

- The law firm of Fahey Schultz Burzich Rhodes, PLC.

According to the Complaint, the Defendants violated Plaintiffs' civil rights by filing a lawsuit against Ms. Slee after she had resigned from her position as Township Supervisor and by wrongfully attempting to serve a temporary restraining order requiring her to return certain Township records and property. Dkt. 1.

---

[1] The parties stipulated to the dismissal of Defendant Hansen on October 6, 2017. Dkt. 46.

Defendants divided themselves into four groups, each of which filed a Motion to Dismiss the § 1983 and pendent state law claims against them. Dkts. 13, 14, 16 and 17. For the reasons discussed below, their motions are **GRANTED.**

## II.     Background

Plaintiff Pamela Slee served as the Woodhull Township Supervisor, an elected position, for at least eight years before resigning on May 5, 2016. Dkt. 13-1 at Pg ID 74; Dkt 13-3 at Pg ID 101; Dkt. 13-3 at Pg ID 109 (Ms. Slee's resignation letter). After she resigned from her position the Township made two written requests that Ms. Slee return "all records, documents, and property" in her possession that belonged to the Township. Dkt. 13-3 at Pg ID 126, 130. The first letter on May 24, 2016, from the new Township Supervisor, Defendant Diana Hasse was returned unclaimed. Dkt. 13-3 at Pg ID 130. Ms. Slee received the second, July 5, 2016, letter from Stephen Delie, an attorney for the Township who works at the Defendant law firm Fahey Schultz Burzych Rhodes PLC. Dkt. 13-3 at Pg ID 130. Ms. Slee replied on Thursday July 7, 2016, stating that she had already turned over all the Township property when she resigned, including anything she had in her home office. Dkt. 13-3 at Pg ID 132. She also stated that she had already forwarded to the Township's clerk any emails concerning Township business that had been received in her personal email account. *Id*

On September 9, 2016, Defendant Township filed a civil complaint against Ms. Slee in the 35th Circuit Court for the County of Shiawassee, Michigan. Dkt. 13-3. Defendant Helen Mills, attorney at Defendant Fahey Schultz Burzych Rhodes PLC, represented the Township in that State Court Action. Dkt. 13-3 at Pg ID 107. The Township alleged that Ms. Slee had used several home computers purchased in whole or part with Township funds to conduct most of her work as Township Supervisor, and also used a private email address, fax number, and home telephone number for Township business. Dkt. 13-3 at Pg ID 101-102. The Township further alleged that following her resignation Ms. Slee had returned neither the devices themselves—which were Township-owned property—nor any of the Township records that she maintained on those devices, despite repeated demands. Dkt. 13-3 at Pg ID 101-102. The Township claimed this conduct violated Ms. Slee's legal duty under MCL 41.62 to deliver Township records upon demand to her successor. *Id*. The Township requested that the state court judge grant an emergency ex parte temporary restraining order (TRO) that would: 1) enjoin Ms. Slee from destroying, damaging, or altering the records and other Township property she had until the Township could make copies; 2) authorize the information technology firm "IT Right" to make and preserve copies of data and software on the hard

drives of any computers Ms. Slee used to conduct Township business; and 3) order Ms. Slee to immediately deliver to the Township: a) any correspondence from her time as Township supervisor including what she sent from her private email accounts, b) any other documents or materials she had created, received, or maintained in her capacity as Township supervisor, and c) any Township property or records she created, received, or maintained as Township supervisor, including several specifically identified items. Dkt. 13-3 at Pg ID 105-106.

The state court granted the Township's request for the TRO the same day it was filed on September 9, 2016, and ordered, verbatim, the relief the Township had requested. Dkt. 13-4 at Pg ID 141-42. The TRO also required Ms. Slee file a report within 14 days summarizing her progress complying with the TRO. Dkt. 13-4 at Pg ID 143.

The TRO issued at 4:24 pm on September 9, 2016. Dkt. 13-4 at Pg ID 143. Around 6:00 pm that evening Defendant Mills, the Township's Attorney, Defendant Ken Young, the IT specialist from IT Right, and two deputy sheriffs—one of whom (Keith Hansen) was previously a defendant in this case until he was dismissed per a stipulation between the parties, Dkt. 46—went to Ms. Slee's home, which she shares with her husband David Slee, to serve the TRO. Dkt. 1 at Pg ID 3; Dkt. 13-1 at Pg ID 76.

Ms. Slee claims that Defendant Mills, at some unspecified time, misrepresented to the deputy sheriffs who ultimately accompanied her to the Slees' home that she had a search warrant for their home and personal computers. Dkt 1 at Pg ID 4, ¶¶ 23-24. Ms. Slee further claims that Defendant Mills "used the TRO and the two Deputy Sheriffs to gain access and entry" into her home. *Id*. It is unclear from these allegations whether Defendant Mills or the deputy sheriffs told the Slees that they had a search warrant when they went to their home on September 9, 2016.

Defendant Mills does not offer much clarification in terms of what happened leading up to the alleged search. Her Motion to Dismiss states only that she, the deputy sheriffs, and Defendant Young (the IT specialist) "went to the Slee house for service of the TRO." Dkt. 13-1 at Pg ID 75.

After Defendants executed the TRO the parties continued to litigate the case. Ms. Slee filed her Verified Answer to the Township's Complaint for Temporary Restraining Order on September 28, 2016, in which she accused the Township of filing the complaint against her as a "political ploy." Dtk. 13-5 at Pg ID 150. Ms. Slee also filed a response to the Township's motion for summary disposition on January 20, 2017, in which she accused the Township of using the TRO as an unlawful pretext for invading her home. Dkt. 13-6 at Pg ID 157.

Eventually, Ms. Slee and the Township settled the State Court Action. The parties executed a Settlement Agreement on March 9, 2017, Dkt. 13-8 at Pg ID 173-75, and stipulated to dismissal of the State Court Action with prejudice on March 13, 2017. Dkt. 13-9 at Pg ID 177-79. Under the terms of the Settlement Agreement Ms. Slee agreed that the Township Supervisor would be allowed to review the hard drive copied from her computer during the September 9, 2016 execution of the TRO. Dkt. 13-8 at Pg ID 173. She also agreed that the Settlement Agreement "may be pled as a complete defense to any past, present or future claim that either party has asserted or may subsequently assert in any suit or claim against the other party." *Id.* at Pg ID 174.

On June 28, 2017, several months after the stipulated dismissal with prejudice of the State Court Action, Plaintiffs filed this 42 U.S.C. § 1983 action. Dkt. 1.

In their Complaint Plaintiffs make the following "common allegations":

- "Defendants" filed the State Court Action against Ms. Slee as retaliation for her public criticism of their management of Township funds. Dkt. 1 at Pg ID 3, ¶ ¶19-20.

- Defendant Mills misrepresented to Deputy Sheriff Hansen, and another deputy whose name was unknown that the TRO was a search warrant, and then "used the TRO and the two

Deputy Sheriffs to gain access" to Plaintiffs' home on September 9, 2016. Dkt. 1 at Pg ID 4, ¶¶23-24.

- Defendant Mills and Deputy Sheriff Hansen had Defendant Young, the IT expert, search Plaintiffs' computers, including Mr. Slee's personal computer, which did not include any Township business records. Dkt. 1 at Pg ID 4 ¶25.

- Defendant Mills and Deputy Sheriff Hansen questioned Plaintiffs in their home for several hours and made Plaintiffs feel like they could not leave. Dkt. 1 at Pg ID 4 ¶26.

- Defendant Mills, Defendant Young, and Deputy Sheriff Hansen "seized" Plaintiffs' personal computers and monitors and removed them from Plaintiffs' home. Dkt. 1 at Pg ID 4 ¶27.

- As a result of this "search and seizure" Plaintiffs experienced extreme emotions distress, damage to their professional reputations, loss of job benefits, and economic loss in the form of attorneys' fees. Dkt. 1 at Pg ID 4-5.

Plaintiffs then make the following claims against "Defendants" without specifying whether that includes all named Defendants or a particular group: 1) Fourth Amendment Violation for unlawful search of Plaintiffs' home and seizure of their computers (Dkt. 1 at Pg ID 7-9; 2) Class One Equal Protection Violation under *Village of Willowbrook v. Olech* for singling Plaintiffs out for "retribution and punishment" by filing the State Court Action against

Ms. Slee and then illegally searching her home and seizing her property without a warrant (Dkt. 1 at Pg ID 9-11); 3) First Amendment Retaliation against the Plaintiffs—who spoke publicly about Township's mismanagement of funds—by filing the State Court Action against Ms. Slee and unlawfully searching the Slees' home (Dkt. 1 at Pg ID 11-13); 4) Fifth Amendment violation for seizing Plaintiffs' personal property without payment (Dkt. 1 at Pg ID 13-14); 5) state law trespass in Plaintiffs' home (Dkt. 1 at Pg ID 15); 6) false imprisonment through questioning Plaintiffs in their home and making them feel as though they could not leave (Dkt. 1 at Pg. ID 16-17); 7) malicious prosecution for filing the State Court Action and continuing the litigation "beyond the point" that it should have continued (Dkt. 1 at Pg ID 17-18); 8) abuse of process for failure to dismiss the State Court Action after there was nothing else to be gained from it, and for Defendant Mills' alleged misrepresentation to the deputy sheriffs that the TRO they were effectuating in searching Plaintiffs' home computers was in fact a search warrant (Dkt. 1 at Pg ID 18-19); 9) false light invasion of privacy for falsely claiming that Ms. Slee stole Township property, and disclosing private information about Mr. Slee. (Dkt. 1 at Pg ID 19-20).

Defendants responded with four motions to dismiss. (Dkts. 13, 14, 16 and 17).

For the reasons discussed below the Court **GRANTS** each of these motions to dismiss.

### III.  Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for the "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Bare allegations are not enough. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted).  The court "primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d

493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

## IV. Analysis

Defendants make broadly the same arguments regarding dismissal. First, they argue that Ms. Slee could have raised the § 1983 and pendent state law claims alleged here in the State Court Action and are barred by res judicata from doing so now.

Second, several Defendants argue that they are immune from suit under the *Noerr-Pennington* doctrine, which protects litigants from retaliatory lawsuits for exercising their right to petition the government in a prior action.

Third, several Defendants argue that they are immune from suit either because their challenged conduct was undertaken in their capacity as government officials, and they were therefore entitled to qualified immunity; or because their conduct was undertaken pursuant to a court-order—the TRO—and they are therefore entitled to quasi-judicial immunity.

Finally, several Defendants argue that Plaintiffs have failed to adequately allege any claims against them.

As discussed below, the Court agrees—under Michigan's broad application of claim preclusion principles— that even though not all the Defendants in this action were named as parties in the State Court Action, Plaintiffs could have raised the claims against

all the Defendants in this action in the State Court Action but failed to do so. Plaintiffs are now trying for a second bite at the apple, but the law allows only one. The Court thus **GRANTS** Defendant Mills' and Defendant Young's Motions to Dismiss, (Dkt. 13, Dkt. 14) on the basis of res judicata without reaching their additional arguments for dismissal.

The Court further concludes that Plaintiffs have failed to allege any facts establishing the Individual Township Defendants' involvement with the allegedly unconstitutional conduct of the other named Defendants and thus **GRANTS** the Individual Township Defendant's Motion to Dismiss (Dkt. 16) as well.

Finally, the Court concludes that Plaintiff Pamela Slee waived any claims she had against Defendant Township in the Settlement Agreement entered in the prior State Court Action, and that regardless of whether Plaintiff David Slee is bound to the terms of that Settlement Agreement the Complaint itself fails to allege any facts establishing that Defendant Township is municipally liable for the actions of its alleged agents and officials under § 1983. The Court thus **GRANTS** the Township's Motion to Dismiss. Dkt. 17.

Each of Defendants' Motions to Dismiss is discussed below in turn and **GRANTED**.

### a. Motion to Dismiss by the Attorney (Helen Mills) and the Law Firm (Fahey, Schultz, Burzych PLC) (Dkt. 13)

Because the Complaint frequently attributes alleged misconduct to "the Defendants," rather than to named individuals, it is difficult to parse the allegations and determine who Plaintiffs are saying did what. But as best as the Court can understand, Plaintiffs make the following claims against Defendant Attorney Mills and her law firm Fahey Schultz Burzych PLC, (who represented Defendant Township in the State Court Action against Ms. Slee): 1) violation of the Fourth Amendment for unlawful search and seizure of Plaintiffs' home computers (Dkt. 1 at Pg ID 4 ¶¶22-26; Pg ID 6, ¶¶ 38-39); 2) trespass for entering Plaintiffs' home without their consent (Dkt. 1 at Pg ID 4, ¶¶24-25; Pg ID 15, ¶¶86-90); 3) false imprisonment for unlawfully restraining Plaintiffs in their home during the search (Dkt. 1 Pg ID 4, ¶¶ 16-17; Pg ID 16, ¶¶99-102); 4) malicious prosecution under MCL 600.2907 and common law for filing a "groundless" lawsuit against Ms. Slee (Dkt. 1 at Pg ID 4 ¶¶22-25; Pg ID 17, ¶¶ 109-112);  5) abuse of process for misrepresenting the TRO as a search warrant to gain entry to Plaintiffs' home (Dkt. 1 at Pg ID 4, ¶¶ 22-26; Pg ID 18, ¶¶ 120-122); 6) invasion of privacy for intruding into Plaintiffs' home (Dkt. 1 at Pg ID 4 ¶¶22-26; Pg ID 19 ¶¶ 131-134, 134(b)).

Defendants Mills and Law Firm argue Plaintiffs' claims should be dismissed against them because they are barred by 1) res judicata; 2) the *Noerr-Pennington* doctrine; 3) Defendants' qualified and quasi-judicial immunity for acts taken pursuant to a court order; and 4) Plaintiffs' failure to properly state several of their claims. Dkt. 13-1.

The Court agrees that all of Plaintiffs' claims asserted here against Defendants Mills and the Law Firm, except their malicious prosecution and abuse of process claims, are barred by res judicata. Because the Court finds that Plaintiffs' federal claim against Defendants Mills and the Law Firm should be dismissed under res judicata, it declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, or address the remainder of Defendants' arguments for dismissal.

### i. Res Judicata bars Plaintiffs' § 1983 claim against Defendants Mills and the Law Firm

Defendants argue *all* of Plaintiffs' claims against them are barred by res judicata. Dkt. 13-1 at Pg ID 80. Federal courts in a § 1983 action must give state court judgments the same preclusive effect those judgments would receive in state court under state law under the Full Faith and Credit statute, 28 U.S.C. § 1738. *Bates v. Township of Van Buren*, 459 F.3d 731, 734 (6th Cir. 2006); *Corzin v. Fordu*, 201 F.3d 693, 703 (6th Cir. 1999).

The Michigan Supreme Court applies res judicata "broadly" to preclude re-litigation of claims where: 1) the prior action was decided on the merits; 2) both actions involved the same parties or their privies; and 3) the claims Plaintiffs raise in the second action were or could have been raised and resolved in the first action. *Adair v. State*, 680 N.W.2d 386, 396 (2004)(citing *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222 (2001)). In other words, the doctrine does not just bar claims already litigated, but "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised, but did not." *Adair*, 680 N.W.2d at 396.

## 1. Adjudication on the Merits

Plaintiff Pamela Slee and Defendant Township stipulated to dismissal with prejudice as to all parties in the State Court Action on March 13, 2017, Dkt. 13-9 at Pg ID 178, after signing a Settlement Agreement on March 9, 2017. Dkt. 13-8 at Pg ID 173-75. Voluntary dismissal with prejudice of a prior lawsuit "acts as an adjudication on the merits for res judicata." *Limbach v. Oakland Co. Bd. Of Co. Rd. Com'rs*, 573 N.W.2d 336 (1997); *see also McCoy v. Michigan*, 369 F. App'x 646, 649-50 (6th Cir. 2010)("[W]e agree with Defendants that the state-court dismissal with prejudice amounts to a decision on the merits"); *see also Milbrath v. Linsenbigler*, No. 2:07-cv-205, 2008 WL 4562261, at *3 (W.D. Mich. 2008)(finding

plaintiffs' voluntary stipulated dismissal with prejudice of a prior state court action was an adjudication on the merits and precluded his subsequent § 1983 suit in federal court).

Thus the first requirement for res judicata based on the prior State Court Action is satisfied.

## 2. Same parties or privies

Under the Michigan Supreme Court's interpretation of the res judicata privity requirement "a perfect identity of the parties is not required, only a substantial identity of interests that are adequately presented and protected by the first litigant." *Adair*, 680 N.W. 2d at 397. The Township brought the prior State Court Action against Ms. Slee only. Ms. Slee and her husband David Slee now bring this action against the various Township Defendants. The fact that the parties have reversed roles from the state action does not "foil the application of res judicata." *Reid v. Thetford Township*, 377 F. Supp. 2d 621, 626 (E.D. Mich. 2005)(citing *Detroit v. Nortown Theatre Inc.*, 323 N.W.2d 411 (1982)). Thus the question of privity presented here is whether Defendant Mills and her law firm had a "substantial identity of interests" with the Township in the State Court Action and whether Mr. Slee had a "substantial identity of interests" with Ms. Slee in that action such that this action and the prior State Court Action involve the same parties or their privies.

First, Michigan courts, and others in this Circuit and elsewhere, have treated attorneys as privies of their clients for purposes of res judicata. *Wallace v. JP Morgan Chase Bank, NA,* No. 13-13862, 2014 WL 4772029, at *4 (E.D. Mich. Sept. 24, 2014)(citing *Plotner v. AT&T Corp.*, 224 F. 3d 1161, 1169) (10th Cir. 2000))("Attorneys are considered privies of their clients for the purposes of res judicata"); *Vacanti v. Apothaker & Associates P.C.*, No. 09-5827, 2010 WL 4702382, at *4 (E.D. Pa. Nov. 12, 2010)(same); *Render v. Hall*, No. 1:12-cv-46 2012 WL 367950 at *7 (S.D. Ohio Feb. 3, 2002)(S.D. Oh. Feb. 3, 2012) *adopted by* 2012 WL 203057 (S.D. Oh. June 6, 2012)(same). Because the claims against Defendant Mills and the Law Firm arose from their conduct carried out on behalf of the Township during the State Court Action, there is a substantial identity of between the Township and its attorneys.

Second, spouses are also considered privies of each other for purposes of res judicata. *See Stolmayer v. McCarthy*, 171 F. Supp. 3d 690, 695 (N.D. Ohio), *aff'd* 673 F. App'x 467 (6th Cir. 2016)(plaintiff's husband, while not a named party in prior administrative proceeding for Medicare benefits was nonetheless her privy in a later federal court action); *Wyler v. Bank of New York Melon*, No. 329153, 2016 WL 6825832, at *3 (Mich. Ct. App. Nov. 17, 2016)(plaintiff's wife, while not a named party in a prior mortgage foreclosure action

was still her husband's privy both as his wife and as another signatory to the mortgage in question). Had Ms. Slee asserted the claims during the State Court Action challenging the search of her home computers, and the intrusion into her home that accompanied that search, she would have adequately represented the interests she and Mr. Slee assert jointly in this Complaint—*i.e.*, the right to be free from unreasonable search and seizure in their home, and their claim that that search also constituted an unlawful trespass and invasion of privacy. By adding her husband as a named party in this action Ms. Slee has not added new interests that were not at issue in the prior action. That Plaintiff has merely added her husband as named party in this action does not therefore mean that she has added a party who did not share a "substantial identity of interests" with her in the prior State Court Action. Thus, David Slee is Pamela Slee's privy from the prior State Court Action for purposes of res judicata here.

The second res judicata requirement is therefore satisfied.

### 3. Plaintiffs' claims arise from the same transaction as the State Court Action and could have been previously adjudicated

Michigan courts employ a "same transaction test" for determining whether parties could have, with reasonable diligence, adjudicated their claims in a prior action. *See SHR Ltd. Partnership*

*v. SWEPI LP*, 173 F. App'x 433, 436 (6th Cir. 2006)(citing *Adair*, 680 N.W. 2d at 397).

Whether the claims in the second action arose from the same transaction as the claims in the first action "is to be determined pragmatically, by considering whether the facts are related in *time, space, origin*, and whether they form a convenient trial unit." *Reid v. Thetford Twp.*, 377 F. Supp. 2d 621, 627 (E.D. Mich. 2005) (quoting *Adair*, 680 N.W.2d at 386)(internal quotations omitted).

In *Reid* the court found that the plaintiff who had been a defendant in a prior state court enforcement action for failure to comply with a township junk ordinance could not, after the adjudication of that ordinance violation was complete, bring a separate § 1983 action in federal court alleging that the enforcement action had been racially discriminatory. 377 F. Supp. 2d at 627. The court considered the *Adair* factors—time, space, origin—to determine that the § 1983 civil rights claims in the second action could have been resolved in the earlier action. First, the *Reid* court found the § 1983 action involved the same *time* period as the prior state court action—plaintiff was claiming at the time the enforcement action itself was brought it was racially motivated. *Reid*, 377. F. Supp. 2d at 628. Second, the court found the § 1983 action involved the same *space* as the prior state court action—plaintiff's home, where the property subject to the enforcement action was located. *Id*. And

third the court found the facts underlying the § 1983 action and the prior state court action had the same *origin*— the origin of the first action was plaintiff having too many "junk" vehicles on his property, and the origin of the second action was the town allegedly harassing plaintiff for having too many "junk" vehicles by bringing the state court action. *Id.* Because of this relationship in time, space, and origin, between the facts in the state court enforcement action and the subsequent § 1983 action, the *Reid* court concluded plaintiff's civil rights allegations could have been joined in the state court action as counterclaims "to form a convenient trial unit." *Id.*

Like the plaintiff's § 1983 claims in *Reid*, Plaintiffs' Fourth Amendment unlawful search and seizure claim here is closely related in time space and origin to the facts underlying the State Court Action. The time is the same: the TRO was issued on September 9, 2016 and the service of the TRO from which Plaintiffs' Fourth Amendment claim against Defendant Mills arises, occurred that same day. The space is the same: Plaintiffs' home, where Ms. Slee kept what Defendant Township claimed were its records and sought to recover through a TRO in the State Court Action, is also at issue in this action. Finally, the origin of the facts is the same: the origin of the State Court Action was Ms. Slee's alleged possession of Township property and records, which the Township sought a TRO to recover, and the origin of the second action is Plaintiffs' complaints

that the TRO action and execution of the TRO violated their constitutional and state law rights.

Other courts in this circuit have also found that defendants in state court enforcement actions, like Plaintiffs here, cannot wait until after a state court enforcement action has concluded to challenge it in federal court without being barred by res judicata. The rationale for this is that the claims these plaintiffs are attempting to raise for the first time in federal court would have been available to them as counterclaims in the state court action had they exercised reasonable diligence. *See Rondigo, LLC v. Township of Richmond*, 2009 WL 3064896, at *8-9 (E.D. Mich. Sept. 22, 2009)(plaintiff who was previously a defendant in state court enforcement action could have asserted his conspiracy, defamation, and equal protection claims as counterclaims against the township in that proceeding).

This reasoning—that defendants cannot wait until after civil state court proceedings against them conclude to assert their counterclaims in a subsequent action—applies with equal force to the claims Plaintiffs now assert against Defendants Mills and the Law Firm. *See Hendrix v. Roscommon Twp.*, 2004 WL 1197359, at *2, *4 (E.D. Mich. May 18, 2004). In *Hendrix*, plaintiffs filed a § 1983 action against a defendant township and its supervisor, claiming that a previous state court enforcement action brought against plaintiffs

by the township had violated their equal protection and due process rights under the Fourteenth Amendment. *Hendrix*, 2004 WL 1197359, at *1. The court found that plaintiffs' failure during the State Court Action to properly raise these constitutional issues as counterclaims against the Township *and* its Supervisor (the township's privy) precluded them from raising those claims in a later § 1983 action. *Hendrix*, 2004 WL 1197359, at *5.

So too here, Plaintiffs could have properly amended their pleadings in the State Court Action to include claims against Defendant Mills and the Law Firm. Under the Michigan Rules of Civil Procedure "persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim subject to MCR 2.205 and 2.206." MCR 2.203(G)(1). And under the permissive joinder of parties rule "all persons may be joined in one action as defendants a) if there is asserted against them jointly, severally, or in the alternative, a right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if a question of law common to all defendants will arise in the action; or b) if their presence in the action will promote the convenient administration of justice." MCR 2.206(2).

The fact that joinder of the Defendant Mills and the Law Firm "to promote the convenient administration of justice" would have been permissive in the State Court Action rather than compulsory

is not dispositive of whether res judicata now precludes Plaintiffs' claims against them. *See Rinaldi v. Rinaldi*, 333 N.W. 2d 61, 64 (Mich. Ct. App. 1983) (even where joinder of counterclaims is permissive the principle of res judicata should be applied "if the present cause of action and claims are not sufficiently dissimilar from those involved in the prior actions"); *accord Scott v. Reif*, 659 F. App'x 338, 344 (6th Cir. 2016) (noting "Michigan courts have rejected the argument that res judicata is inapplicable where joinder of claims is not compulsory"). Additionally, § 1983 claims may properly be brought in Michigan state court. *Dickerson v. Warden*, 289 N.W.2d 841, 843 (Mich. Ct. App. 1980).

Finally, claims arising out of the execution of this TRO were available to Plaintiffs at the time Ms. Slee filed her Verified Answer in State Court on September 28, 2016, more than two weeks after the alleged search took place. Dkt. 13-5 at Pg ID 147-51. Indeed, in her answer Ms. Slee alluded to claims challenging the search. *See* Dkt. 13-5 at Pg ID 151 (referencing the September 9, 2016 "invasion" of her home). She did so again in her response to the Township's motion for summary disposition. Dkt. 13-6 at Pg ID 155 (noting Defendant Mills "used the [TRO] to enlist the aid of armed deputies . . . in entering the home of [Plaintiffs] and taking [Ms. Slee's] private property, and [staying] for over three hours"); Dkt. 13-6 at Pg ID 157 (noting that the Defendants who conducted the search

had "no right to invade the home of Ms. Slee and her husband under color of law using a Temporary Restraining Order"); Dkt. 13-6 at Pg ID 160 ("[Defendant Mills] assumed that the [TRO] allowed her to invade the private home of the defendant and take her property").

The record clearly demonstrates that with reasonable diligence, Plaintiffs could have raised their § 1983 and state law claims against Defendant Mills and the Law Firm in the prior State Court Action. In this action however, such claims are appropriately barred by the doctrine of res judicata.

### ii. The Court will not exercise supplemental jurisdiction over Plaintiffs' remaining state law claims against Defendants Mills and the Law Firm

Because the Court finds that Plaintiffs' sole federal claim against Defendants Mills and the Law Firm is barred by res judicata, it declines to exercise pendent jurisdiction over Plaintiffs' remaining state law claims: false imprisonment, malicious prosecution, abuse of process, and invasion of privacy. In this Circuit courts typically decline to retain jurisdiction over state law claims where all federal claims are dismissed before trial. *See Musson Theatrical v. Fed. Express Corp.*, 89 F. 3d 1244, 1254-55 (6th Cir. 1996)("[W]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims"); *see also Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988)("It is a clear

rule of this circuit that if a plaintiff has not stated a federal claim, his pendent state law claims should be dismissed").

The Court will therefore **GRANT** Defendants Mills' and the Law Firm's Motion to Dismiss (Dkt. 14) with prejudice.

### b.  The Motion to Dismiss by the Defendant IT Specialist (Ken Young) (Dkt. 14)

As noted above, Plaintiffs' Complaint is imprecise in specifying which claims are alleged against which Defendants. Nonetheless the Court understands the claims against Defendant Young, the IT specialist who helped conduct the search of Plaintiffs' home, to be the following: 1) violation of the Fourth Amendment for unlawful search of Plaintiffs' home and personal computers (Dkt. 1 at Pg ID ¶ 39(a)-(h)); 2) trespass (Dkt. 1 at Pg ID 15, ¶¶ 89-91); and 3) invasion of privacy (Dkt. 1 at Pg ID 19, ¶¶ 133, 134(b)).

Defendant Young makes the same general arguments for dismissal as Defendants Mills and the Law Firm: 1) res judicata; 2) *Noerr Pennington* doctrine; 3) immunity; 4) failure to properly plead claims. Dkt. 14 at Pg ID 394-408.

Because the Court finds that Plaintiffs' claims against Defendant Young are barred by res judicata, it will not address the remaining grounds for dismissal.

As discussed above, Michigan courts apply res judicata "broadly" to prevent re-litigation of claims where: 1) the prior action

was decided on the merits; 2) both actions involved the same parties or their privies; and 3) the claims Plaintiffs raise in the second action were or could have been raised and resolved in the first action. *Adair v. State*, 680 N.W.2d 386, 396 (2004)(citing *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222 (2001)). As with Plaintiffs' claims against Defendant Mills and her law firm, the Court concludes Plaintiffs' claims against Defendant Young, which challenged his conduct during the same alleged search and seizure on September 9, 2016, could also have been raised with reasonable diligence in the State Court Action and are now thus precluded under res judicata.

### i. Adjudication on the merits

For the reasons discussed above the Court has concluded that the stipulation of dismissal with prejudice in the State Court Action was an adjudication on the merits that satisfies the first prong of the res judicata analysis.

### ii. Same parties or privies

The Court also finds that Defendant Young, who Plaintiffs allege conducted the unlawful search on behalf of the Township, Dkt. 1 at Pg ID 7, ¶40, is the Township's privy for purposes of res judicata. "Regarding private parties, a privy includes a person so identified in interest with another that he represents the same legal right, such as a principal to an agent, a master to a servant, or an

indemnitor to an indemnitee." *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 357, n.10, 359 (Mich. Ct. App. 2013)(officer challenged in a § 1983 action for conducting search, although not a party to a prior suit, was "likely" a privy of the city since he was acting as its "agent"); *see also Larry Powerski*, 148 F. Supp. 3d 584, 589, 594-95 (E.D. Mich. 2015)(defendant in § 1983 action was privy of named party in prior state court action by virtue of their employer-employee relationship).

Here, Plaintiffs have alleged that Defendant Young was engaged in a "joint action" with two deputy sheriffs, Dkt. 1 at Pg ID 7, ¶40, and that the conduct of the Defendants who actually performed the search—Defendants Mills, Young, and the deputy sheriffs—"was/is attributed to the Defendant Township." Dkt. 1 at Pg ID, ¶ 78. In other words, the alleged basis of Plaintiffs' Fourth Amendment, trespass, and invasion of privacy claims against Defendant Young is that he was acting as the Township's agent/employee while engaging in all of his challenged conduct. The Court therefore concludes Defendant Young is a privy of Defendant Township for purposes of res judicata.

For reasons discussed above, Plaintiff David Slee, while not a named party in the State Court Action, is a privy of his wife, Plaintiff Pamela Slee for purposes of res judicata in this action. The second requirement for res judicata is therefore satisfied here.

### iii. Plaintiffs' claims arise from the same transaction as the State Court Action and could have been previously adjudicated

Finally, the Court concludes that Plaintiffs' claims against Defendant Young in this action arose from the same transaction as the claims in the first action. As with Plaintiffs' claims against Defendants Mills and the Law Firm, Plaintiffs' claims for unlawful search, trespass, and invasion of privacy against Defendant Young arose from the September 9, 2016 search of Plaintiffs' home. As the Court concluded above, the facts underlying Plaintiffs' claims challenging conduct during that search are related in time, space, and origin such that they would have formed a convenient trial unit with the prior State Court Action. Finally, as discussed above, claims arising out of the execution of this TRO against the Defendants who conducted the alleged search were available to Ms. Slee at the time she filed her responsive pleadings in state court, and even alluded to in those pleadings.

Thus the Court finds that Plaintiffs' claims against Defendant Young satisfy the third res judicata requirement and are barred in this action.

The Court will therefore **GRANT** Defendant Young's Motion to Dismiss (Dkt. 14) with prejudice.

### c. The Motion to Dismiss by the Individual Township Defendants (Diana Hasse, Kay Nickols, Carol Maize, Tom Jelenek, Rick Betts, Jim Cribbs, and Bill Dodge) (Dkt. 16)

According to their Motion to Dismiss, the "Individual Township Defendants" were all members of the Woodhull Township Board of Trustees when the State Court Action was filed, and the resulting TRO was issued against Ms. Slee. Dkt. 16 at Pg ID 467. They argue that the Complaint should be dismissed against all of them because: 1) Plaintiff failed to plead any specific allegations against any of these individual defendants; 2) res judicata bars Plaintiffs' claims; 3) they are immune from suit in their official capacities; and 4) Plaintiffs have failed to plead sufficient facts to support several of what the Individual Township has guessed are Plaintiffs' claims against them. Dkt. 16.

The Court agrees that Plaintiffs have not actually stated *any* claims against the Individual Township Defendants in their Complaint. Plaintiffs *name* each of the Individual Township Defendants in the "Jurisdiction, Venue and Parties" section of the Complaint. Dkt. 1 at Pg ID 2-3, ¶¶ 6-13. But none of Plaintiffs' "Common Allegations," or subsequent claim-specific allegations, discuss with particularity any involvement by the Individual Township Defendants in the initiation of the State Court Action, the prosecution of that action, or the execution of the TRO during that action.

Such vague pleading fails to meet even the low standard under Fed. R. Civ. Proc. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief . . . in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))(internal quotations omitted).

Because Plaintiffs have provided no such notice to the Individual Township Defendants regarding the claims against them the Court **GRANTS** the Individual Township Defendants' Motion to Dismiss without prejudice. (Dkt. 16).

### d. The Motion to Dismiss by Defendant Woodhull Township (Dkt. 17)

Plaintiffs have repeatedly alleged that Defendant Township is liable for other Defendants' unconstitutional conduct under *Pembaur v. City of Cincinnati*, and for Defendants' other unlawful conduct under a theory of vicarious liability.

In so doing they have attempted to plead the following claims against Defendant Township: 1) violation of the Fourth Amendment for search of their home and personal computers as well as malicious prosecution (Dkt. 1 at Pg ID 7, ¶40); 2) violation of Class One Equal Protection under *Village of Willowbrook v. Olech* for targeting Plaintiff Pamela Slee through the State Court Action (Dkt.

1 at Pg ID 9-10, ¶¶50-52); 3) violation of the First Amendment for retaliating against Ms. Slee after both Plaintiffs spoke publicly about Township government corruption by filing the State Court Action against Ms. Slee and conducting the unlawful search and seizure in the Slees' home (Dkt. 1 at Pg ID 11-2, ¶¶63-65); 4) violation of the Fifth Amendment for taking Plaintiffs' personal property without payment (Dkt. 1 at Pg ID 13-14, ¶¶ 76-78); 5) false imprisonment of Plaintiffs by the Township's "agents and/or employees and/or officers" (Dkt. 1 at Pg ID 16, ¶¶ 98-103); 6) malicious prosecution under Michigan common law and MCL 600.2907 for filing a baseless State Court Action against Plaintiffs (Dkt. 1 at Pg ID 17, ¶¶ 110-13); 7) abuse of process for refusing to dismiss its baseless lawsuit against Plaintiffs, and through the acts of its "agents and/or employees and/or officers" who used the TRO to unlawfully search Plaintiffs' home (Dkt. 1 at Pg ID 18, ¶¶120-24); 8) false light invasion of privacy for misrepresenting Plaintiff Pamela Slee in the public eye, and invasion of Plaintiffs' privacy by the Township's "agents and/or employees and/or officers" conducting the search of Plaintiffs' home, (Dkt. 1 at Pg ID 19, ¶¶ 131-35).

Defendant Township argues Plaintiffs' claims should be dismissed because: 1) Plaintiffs have not attributed any factual allegations to actions by the Township; 2) Plaintiffs' claims are barred by res judicata; 3) the Settlement Agreement between the Township

and Plaintiff Pamela Slee precludes this suit; 4) Plaintiffs failed to allege facts supporting a § 1983 claim; 5) Defendant Township has governmental immunity from Plaintiffs' state law claims against it; 6) Plaintiffs have failed to plead facts sufficient to support their state law claims. Dkt. 17.

For reasons discussed below the Court finds that Ms. Slee has waived all of her claims against Defendant Township under the Settlement Agreement. Regarding any claims Mr. Slee might still have against Defendant Township, the Court finds the Complaint has not alleged sufficient facts to state a claim for municipal liability under § 1983 for the Fourth Amendment and Fifth Amendment claims, and fails to allege facts sufficient to support a Fourteenth Amendment Equal Protection or First Amendment retaliation claim by Mr. Slee against Defendant Township.

### i. Plaintiff Pamela Slee waived any claims against the Township under the Settlement Agreement

The Court agrees that Plaintiff Pamela Slee waived any past, present, or future claims she might later assert against Defendant Township under the terms of the March 9, 2017 Settlement Agreement. That Agreement reads: "[This Agreement] may be pled as a complete defense to *any* past, present or future claim that *either* party has asserted or may subsequently assert in *any* suit or claim against the other party." Dkt. 13-8 at Pg ID 174 (emphasis added).

Plaintiffs do not challenge the validity of the Settlement Agreement, but argue that under Paragraph 5 the parties agreed that "consideration for this Agreement [was] given only to resolve the disputed claims." Dkt. 31 at Pg ID 870 (quoting the Settlement Agreement Dkt. 13-8 at Pg ID 173-74). This language, according to Plaintiffs, means that the Settlement Agreement only prohibited Ms. Slee from re-litigating claims already addressed in the State Court Action and thus would not bar Plaintiffs' current claims against Defendant Township. Dkt. 31 at Pg ID 870. This argument is unconvincing, particularly in light of the unambiguous language in Paragraph 6, quoted above, that expressly waives any and all claims between the parties including those either party "*may subsequently assert.*" Dkt. 13-8 at Pg ID 174 (emphasis added).

The Court therefore finds that Ms. Slee is barred from asserting any claims here against Defendant Township and **GRANTS** Defendant Township's Motion to Dismiss (Dkt. 17) as to all of Ms. Slee's claims with prejudice.

### ii. Plaintiffs' Complaint fails to allege facts sufficient to support Defendant Township's municipal liability under §1983 for Fourth, Fourteenth, and Fifth Amendment violations

Plaintiffs are correct, and Defendant Township does not disagree, that Mr. Slee was not signatory to the Settlement Agreement and is therefore not bound by its terms. Nonetheless, the Complaint

itself does not plead any facts establishing that Defendant Township is municipally liable for violations of the Fourth, (Dkt. 1 at Pg ID 6-9), Fourteenth, (Dkt. 1 at Pg ID 9-11), and Fifth Amendments (Dkt. 1 at Pg ID 13-14) by its officials under § 1983.

Plaintiffs repeatedly allege Defendant Township is liable to them for these violations of their constitutional rights under "the attribution rule" of *Pembaur v. City of Cincinnati*. Dkt. 1 at Pg ID 7, ¶40; Pg ID 10, ¶52; Pg ID 14, ¶78.

In order to state § 1983 claims against a municipality, a plaintiff must allege that 1) agents of the municipality, acting under color of state law; 2) violated the plaintiff's constitutional rights, and 3) that a municipal policy or policy of inaction was the moving force behind the violation. *Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 379 (1989).

The Complaint does not state sufficient facts to satisfy these requirements for the Fourth, Fourteenth, or Fifth Amendment claims against Defendant Township.

With regard to the Fourth Amendment and Fifth Amendment claims challenging the September 9, 2016 search and seizure, even assuming the deputy sheriffs, Defendant Mills, or Defendant Young, were acting as agents of the municipality "under color of

state law" when they conducted the search, the Complaint contains no allegations that the search was conducted pursuant to a municipal policy or policy of inaction. Instead, Plaintiffs allege only that Defendant Mills spearheaded the search by misrepresenting the TRO as a search warrant and that her conduct is somehow attributable to Defendant Township. Dkt. 1 at Pg. ID 4, ¶ 24. Plaintiffs have not alleged any facts, however, that would show the unlawful search was conducted pursuant to an unlawful Township policy, custom, and practice.

While a decision by a single policymaking official can constitute a municipal policy for purposes of municipal liability under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), that decision must be made pursuant to a policymaker's specifically delegated policy-making authority. 475 U.S. 480-81, 484-85 (finding the city could be sued for the actions of its deputy sheriffs where those actions were directed by the county prosecutor, to whom such decision-making authority was legislatively delegated).

Here, Plaintiffs have not alleged that any of the individual Defendants who took part in the search are municipal policymakers to whom such decisions are delegated. Absent an allegation that the individual Defendants' unconstitutional actions were taken pursuant to a municipal policy, or under a directive from a  policymaking official, Plaintiffs may not do what they have attempted to do here:

allege that Defendant Township is somehow vicariously liable for the acts of its officials/agents. *See D'Ambroso v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014)(citing *Monell*, 436 U.S. at 691)("A municipality may not be held liable under § 1983 on a *respondeat superior* theory—in other words *solely* because it employees a tortfeasor") (internal quotations omitted).

The Complaint thus fails to state claims for Fourth or Fifth Amendment violations against Defendant Township.

### iii. Plaintiffs have not alleged sufficient facts to state a Fourteenth or First Amendment claim by Mr. Slee against Defendant Township

Plaintiffs have also failed to plead sufficient facts establishing that Mr. Slee has a Fourteenth Amendment Equal Protection Claim or a First Amendment retaliation claim against Defendant Township.

With regard to the Complaint's "class of one" Equal Protection claim, a plaintiff must allege that the state treated him differently than others similarly situated, and that no rational basis exists for that different treatment. *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)(citing *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The Complaint's Fourteenth Amendment claim does not allege that Mr. Slee was treated differently from other similarly situated individuals. Rather, it alleges only that the state court lawsuit against Ms. Slee was retaliatory toward both him and

Ms. Slee. Dkt. 1 at Pg ID 9. Thus the Complaint has not stated a Fourteenth Amendment claim by Mr. Slee against Defendant Township.

Similarly, the Complaint fails to make out a First Amendment retaliation claim by Mr. Slee against Defendant Township. In order to state such a claim under § 1983 a plaintiff must plead sufficient factual allegations to establish that "1) the plaintiff engaged in constitutionally protected conduct; 2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012).

Here the Complaint does allege that both Mr. and Ms. Slee spoke publicly about corruption within Defendant Township's government—protected conduct under the First Amendment. Dkt. 1 at Pg ID 1, ¶ 61-63. It also alleges that Defendant Township took retaliatory action against both Mr. and Ms. Slee by filing the State Court Action against Ms. Slee, and searching the Slees' home without a warrant. Dkt. 1 at Pg ID 11, ¶ 63. Even assuming the retaliatory conduct of filing the lawsuit in the state court and unlawfully searching the Slees' home is attributable to Defendant Township, Plaintiffs have still not alleged any facts establishing a causal connection between the protected speech and the retaliatory conduct.

A plaintiff must show both that the adverse action was proximately caused by an individual defendant's acts and that the individual who took those acts was substantially motivated by a desire to punish another for exercising her First Amendment rights. *See Bright v. Gallia County*, 753 F.3d 639, 653 (6th Cir. 2014). Rather than allege facts supporting any inference of connection between Mr. Slee's personal public statements about Defendant Township and the subsequent state action requesting return of Township records from his wife, the Complaint offers only the conclusory allegation that "there was/is a causal connection between Plaintiffs' engaging in protected activity, and the adverse actions and retaliation they suffered at the hands of Defendants." Dkt. 1 at Pg ID 12, ¶ 64.

The Complaint thus fails to state any First Amendment claims by Mr. Slee against Defendant Township.

### iv. The Court declines to exercise supplemental jurisdiction over the remaining state law claims against the Township

Because the Court finds the Complaint does not state any claims against Defendant under § 1983, it will also dismiss the pendent state law claims against Defendant Township. Asserting supplemental jurisdiction over state law claims is a matter of discretion, which the Court declines to exercise here. *See Musson Theatrical v. Fed. Express Corp.*, 89 F. 3d 1244, 1254-55 (6th Cir.

1996)("[W]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims"); *see also Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988)("It is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pendent state law claims should be dismissed").

Accordingly, the Court **GRANTS** Defendant Township's Motion to Dismiss (Dkt. 17) Plaintiff Pamela Slee's claims with prejudice and Plaintiff David Slee's claims without prejudice.

## V.    Conclusion

For the foregoing reasons, Defendants Helen Mills' and Fahey Fahey Schultz Burzich Rhodes, PLC's Motion to Dismiss (Dkt. 13) is **GRANTED**. Defendant Ken Young's Motion to Dismiss (Dkt. 14) is **GRANTED**. The Individual Township Defendants' Motions to Dismiss (Dkt. 16) is **GRANTED without prejudice**. And Defendant Township's Motion to Dismiss is **GRANTED** as to any claims Ms. Slee has attempted to bring against it, and **GRANTED without prejudice** as to any claims Mr. Slee has attempted to bring against it.

**SO ORDERED.**

Dated: February 6, 2018      s/Terrence G. Berg
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on February 6, 2018.

s/A. Chubb
Case Manager